**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**MISSOULA DIVISION**

_____

SARA S. NOZISKA,

                         CV 09-143-M-DWM-JCL

          Plaintiff,

      vs.                     FINDINGS & RECOMMENDATION
                              OF UNITED STATES
MICHAEL J. ASTRUE,          MAGISTRATE JUDGE
Commissioner of Social Security,

                Defendant.

_____

      Plaintiff Sara Noziska brings this action under 42 U.S.C. § 405(g) seeking

judicial review of the decision of the Commissioner of Social Security

(Commissioner) denying his application for disability insurance benefits under

Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-433, and for

supplemental security income benefits under Title XVI of the Act, 42 U.S.C. §§

1381-1383(c).

      Noziska initially applied for benefits in January 2004.  Tr. 178-80, 557-59.

That application was denied initially and on reconsideration, and an administrative

hearing was held on October 11, 2005.  Tr. 48-123, 621-714.  On June 4, 2006,

PAGE 1

ALJ Hayward Reed issued an unfavorable decision.  Tr. 131-47.  The Appeals

Council denied Noziska's request for review, and Noziska sought judicial review.

Tr. 42-45.  On January 15, 2008, the parties stipulated to remand Noziska's claim

to the agency for further administrative proceedings.  Tr. 782.  Pursuant to that

stipulation, the Court entered an order remanding the matter for a de novo hearing

and directing the ALJ to consider the materiality of Noziska's substance abuse.

Tr. 782.

     In the meantime, Noziska had filed a second application for benefits in

August 2006 - two months after ALJ Reed's unfavorable decision on her first

application.  Tr. 828-30.   Noziska's second application was likewise denied

initially and on reconsideration, and she requested a hearing.  Tr. 794-95.  On

February 14, 2008,  ALJ Lloyd Hartford held a hearing on Noziska's second

application.  Tr. 1164-1267.   On May 21, 2008, before issuing a written decision

on that second application, ALJ Hartford held a de novo hearing on Noziska's first

application pursuant to the Court's remand order.  Tr. 731-59.  During that

hearing, ALJ Hartford indicated that he was consolidating both claims.  Tr. 1060-

1156.

     On January 28, 2009, ALJ Hartford issued an unfavorable decision on

Noziska's consolidated claims.  Tr. 731-59.  The Appeals Council denied

PAGE 2

Noziska's subsequent request for review, making ALJ Hartford's decision the agency's final decision for purposes judicial review.  Tr. 715-17.  Jurisdiction vests with this Court pursuant to 42 U.S.C. § 405(g).

Noziska claims she has been disabled since December 2003 due to post traumatic stress disorder, hepatitis, chronic depression, and neck problems.  Tr. 848.  Noziska was 28 years old at the time of her December 2003 alleged onset date, and 33 years old at the time of the ALJ's most recent decision.  Tr. 843.

## I.  STANDARD OF REVIEW

This Court's review is limited.  The Court may set aside the Commissioner's decision only where the decision is not supported by substantial evidence or where the decision is based on legal error.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Widmark v. Barnhart,* 454 F.3d 1063, 1070 (9th Cir. 2006).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities."  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  This Court must uphold the Commissioner's findings "if supported by inferences reasonably drawn from the record."  *Batson v.*

PAGE 3

*Commissioner of Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir.

2004).  "[I]f evidence exists to support more than one rational interpretation," the

Court "must defer to the Commissioner's decision."  *Batson*, 359 F.3d at 1193

(*citing Morgan v. Commissioner*, 169 F.3d 595, 599 (9th Cir. 1999).  This Court

"may not substitute its judgment for that of the Commissioner."  *Widmark*, 454

F.3d at 1070 (*quoting Edlund*, 253 F.3d at 1156).

## II. BURDEN OF PROOF

To establish disability, a claimant bears "the burden of proving an 'inability

to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which...has lasted or can be expected

to last for a continuous period of not less than 12 months.'" *Batson*, 359 F.3d at

1193-94 (*quoting* 42 U.S.C. § 423(d)(1)(A)).

In determining whether a claimant is disabled, the Commissioner follows a

five-step sequential evaluation process.  20 C.F.R. § 404.1520.  The claimant bears

the burden of establishing disability at steps one through four of this process.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).    At the first step, the ALJ

will consider whether the claimant is engaged in "substantial gainful activity."  20

C.F.R. § 404.1520(a)(4)(I).  If not, the ALJ must determine at step two whether the

claimant has any impairments that qualify as "severe" under the regulations.  20

PAGE 4

C.F.R. § 404.1520(a)(4)(ii).  If the ALJ finds that the claimant does have one or more severe impairments, the ALJ will compare those impairments to the impairments listed in the regulations.  20 C.F.R. § 404.1520(a)(4)(iii).  If the ALJ finds at step three that the claimant has an impairment that meets or equals a listed impairment, then the claimant is considered disabled.  20 C.F.R. § 404.1520(a)(iii).  If, however, the claimant's impairments do not meet or equal the severity of any impairment described in the Listing of Impairments, then the ALJ must proceed to step four and consider whether the claimant retains the residual functional capacity (RFC) to perform his or her past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant establishes an inability to engage in past work, the burden shifts to the Commissioner at step five to establish that the claimant can perform other work in the national economy.  20 C.F.R. § 404.1520(a)(4)(v).

## III.  DISCUSSION

Following the steps in the sequential evaluation process, the ALJ first found that Noziska met the insured status requirement of the Act through December 31, 2010, and had not engaged in substantial gainful activity since her alleged onset date.  Tr. 734.  For purposes of steps two through five, the ALJ first considered whether Noziska was disabled during the nearly two year period between her December 15, 2003, alleged onset date and her discharge from Pathways

PAGE 5

Treatment Center on October 3, 2005.  Tr. 553-55; 734-43.  With respect to this initial period, the ALJ found at step two that Noziska suffered from "the following severe combination of impairments: axial neck pain with associated cervicogenic headaches, hepatitis C, a methamphetamine induced psychotic disorder, an anxiety disorder, not otherwise specified, and a history of alcohol and polysubstance abuse."  Tr. 735.

The ALJ then determined that Noziska's mental impairments, including her methamphetamine induced psychotic disorder, satisfied the requirements of Listing 12.03 for schizophrenic, paranoid and other psychotic disorders.  Tr. 736.  Although the ALJ accepted that Noziska's psychotic disorder was of listing-level severity before October 3, 2005, he found there was no evidence the "disorder existed by itself, absent heavy use of methamphetamines, alcohol and other substances."  Tr. 737.   The ALJ thus concluded that absent her substance abuse, Noziska would have had the residual functional capacity "' to perform essentially the full range of at least light work...."  Tr. 739.  Based on that residual functional capacity, the ALJ found that absent her substance abuse,  Noziska would have been able to perform her past relevant work as a housekeeper, fast food worker, and some of her prior waitress positions.  Tr. 742.  Because Noziska would have been capable of working had she stopped her substance abuse, the ALJ found that

PAGE 6

Noziska's "substance use disorders were a contributing factor material to the determination of disability," and thus concluded she was not disabled within the meaning of the Act at any time from the date her application was filed through October 3, 2005.  Tr. 743.

Turning next to the period of time since October 3, 2005, the ALJ found that Noziska had the following severe impairments: "axial neck pain with associated headaches, fibromyalgia, hepatitis C, a depressive disorder, borderline intellectual functioning, a generalized anxiety disorder, an unspecified personality disorder, and history of alcohol and polysubstance abuse, in early, partial remission."  Tr. 743.  At step three, the ALJ determined that Noziska's impairments did not meet or medically equal any impairment described in the Listing of Impairments.  Tr. 744..  The ALJ also found that while Noziska's "medically determinable impairments could reasonably be expected to produce the alleged symptoms," her "statements concerning the intensity, persistence, and limiting effects of th[o]se symptoms [were] not entirely credible...."  Tr. 749.  Having done so, the ALJ next determined that Noziska retained the residual functional capacity to perform a limited range of light work.  Tr. 748.  Based on that residual functional capacity, the ALJ concluded that Noziska could perform her "past relevant work as a housekeeper, fast food worker, and some waitress positions."  Tr. 757.

PAGE 7

Noziska challenges the ALJ's decision on several grounds, each of which is discussed in turn below.

## A.  Administrative Record

In her opening brief, Noziska argued that the administrative record submitted to the Court was incomplete because it was missing a duplicate copy of the October 2005 hearing transcript, as well as the February 2008, hearing transcript.  Doc. 16, at 6-8.  The Commissioner has since supplemented the record to include the missing the pages, and the record is now complete.

## B.  Substance Abuse

Noziska argues the ALJ erred in finding that her substance abuse was a contributing factor material to the finding of disability before October 3, 2005.

A claimant is ineligible for benefits if alcoholism or drug addiction would "be a contributing factor material to the Commissioner's determination that the individual is disabled."  42 U.S.C. § 423(d)(2)(C).  *Parra v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2007).  In a case with evidence of drug or alcohol abuse, the claimant bears the burden of proving that her "substance abuse is not a material contributing factor to [her] disability."  *Parra*, 481 F.3d at 748. For purposes of determining whether a claimant's substance abuse is a material contributing factor, the critical question is whether the claimant would still be disabled if she stopped

PAGE 8

using drugs or alcohol. 20 C.F.R. § 404.1535(b)(1). In making this assessment,

the ALJ is to evaluate which of the claimant's physical and mental limitations

"would remain if [the claimant] stopped using drugs or alcohol and then determine

whether any or all of [the claimant's] remaining limitations would be disabling."

20 C.F.R. § 404.1535(b)(2).

In its January 16, 2008, remand order, the Court instructed the ALJ to give

Noziska the opportunity to obtain additional evidence, in the form of a

consultative examination and/or medical expert testimony, for purposes of

determining the extent of her limitations when she abstains from substance abuse.

*Noziska v. Astrue*, 9:07-CV-00077-JCL, Dkt. 23 (Jan. 16, 2008).   The Court also

directed the ALJ to "explain the weight given to all opinions and testimony on this

issue" and ultimately "determine whether substance abuse is material to a finding

of disability." *Id.*

In accordance with those instructions, the ALJ held a de novo hearing on

May 21, 2008, and elicited testimony from medical expert Dr. Edward Trontel.  Tr.

1060-1156.   Dr. Trontel testified based on his review of the medical records that

Noziska had used methamphetamine for several years, beginning at the age of 18.

Tr. 1125.  Dr. Trontel noted that while the frequency of Noziska's

methamphetamine use was not specifically documented in the record, it was

PAGE 9

significant enough "in September of 2005 to result in a psychiatric hospitalization for treatment of a methamphetamine induced psychosis." Tr. 1125-26. Based on his review of the record, Dr. Trontel testified that Noziska's "substance abuse was material to the psychotic disorder." Tr. 1129. Dr. Trontel also indicated that before Noziska completed treatment at Pathways in October 2005, she would have been incapable of working because "she was toxic from methamphetamine." Tr. 1143.

With respect to the period of time following Noziska's discharge from Pathways, however, Dr. Trontel found no evidence of psychosis or heavy methamphetamine use, and stated that Noziska would have been capable of working on a sustained basis. Tr. 1128-29. Dr. Trontel explained that after Noziska's discharge from Pathways, she was able to function much as she had "earlier in her life before the amphetamines affected her severely." Tr. 1130. Dr. Trontel testified that although Noziska apparently suffered from personality disorder with borderline and antisocial features, chronic major depressive disorder, and post traumatic stress disorder after her stay at Pathways, those disorders did not significantly interfere with her ability to work. Tr. 1138.

Citing Dr. Trontel's testimony in conjunction with the underlying medical records, the ALJ agreed that Noziska's mental impairments satisfied the criteria of

PAGE 10

Listing 12.03 between the time of her alleged onset date and the completion of her stay at Pathways in October 2005, but found that her substance abuse was a material contributing factor to her disability.  Tr. 736-37.  Noziska contests that finding, arguing that because Dr. Trontel was a non-examining physician his testimony  by itself cannot constitute substantial evidence.[1]   But the Ninth Circuit has made clear that the opinion of a non-treating, non-examining physician may in fact constitute substantial evidence, so long as the opinion is "consistent with independent clinical findings or other evidence in the record."  *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

That is the case here.  Dr. Trontel's testimony is consistent with the clinical findings and medical records of Noziska's treating and examining physicians.   As Dr. Trontel testified, Noziska's medical records indeed reflect that she was hospitalized in September 2005 for methamphetamine induced psychosis.  Tr. 414-33, 464.  On her admission, doctors identified her prognosis as "[g]uarded due to history and ongoing abuse of drugs and alcohol."  Tr. 416.  By the time of her

_____

[1]  Noziska also argues the ALJ erred by allowing Dr. Trontel to testify as a medical expert "because of his prior involvement with the case."  Dkt. 25, at 3.  Presumably, Noziska is referring to the fact that Dr. Trontel also testified at the February 2008 hearing on her second application for benefits.  Noziska does not cite any authority for the proposition that it was error for the ALJ to allow the same medical expert to likewise testify at the subsequent hearing on the consolidated applications.

PAGE 11

discharge, Noziska admitted to having used drugs, showed interest in participating

in drug treatment, and had begun to show some insight into her prior behavior and

recognized that she had indeed been psychotic.  Tr. 726, 554.  These medical

records are consistent with Dr. Trontel's testimony, and substantiate his

determination that before Noziska was discharged from Pathways, her substance

abuse was a contributing factor material to her disability.

Noziska maintains that Dr. Trontel's testimony was inconsistent with a

report  prepared by consulting psychologist Dr. Mark Mozer.  Dr. Mozer examined

Noziska in September 2004, and diagnosed her with a psychotic disorder and

possible paranoid schizophrenia.  Tr. 346.   Dr. Mozer did not, however, diagnose

her with a substance abuse disorder or otherwise indicate that her psychotic

disorder was a result of substance abuse.  Tr. 342-46.  As the ALJ noted in his

decision, however, Dr. Mozer was a one-time examining physician who did not

have the opportunity to establish a treating relationship with Noziska.  Tr. 742.

Noziska told Dr. Mozer that she had no alcohol problems, and apart from

admitting to using "a little marijuana when she was much younger," told Dr.

Mozer "that drugs have not been significant."  Tr. 343.  Dr. Mozer does not appear

to have had any information about Noziska's history of drug and alcohol use,

other than what she reported to him.  It is no surprise, then, that he did not

PAGE 12

diagnose Noziska with a substance abuse disorder or otherwise identify substance abuse as the reason for her psychotic disorder.  Unlike Dr. Mozer, Dr. Trontel had the benefit of reviewing all of Noziska's medical records and upon doing so was able to identify substance abuse as a contributing factor.  Dr. Trontel's opinion was thus consistent with that of Dr. Mozer.

Noziska also argues that Dr. Trontel's testimony was inconsistent with a report prepared by examining psychologist Dr. Tristan Fallis.  Dr. Fallis examined Noziska in December 2006, and diagnosed her with  "Amphetamine Dependence with Physiological Dependents, Sustained Full Remission."  Tr. 618.  Dr. Fallis also diagnosed Noziska with a major depressive disorder, posttraumatic stress disorder, and borderline intellectual functioning.  Tr. 618.   According to Noziska, Dr. Fallis's report suggests that, even absent her substance abuse, she was as disabled in December 2006 as she had been  before October 2005.  In Noziska's view, this means that Dr. Trontel's opinion as to the materiality of her substance abuse was flawed, and the ALJ should have found her disabled.

But Dr. Fallis's report is consistent in large part with Dr. Trontel's testimony.   Dr. Trontel agreed that Noziska had suffered from personality disorder with borderline and antisocial features, chronic major depressive disorder, and post traumatic stress disorder after October 2005, but testified based on his review

PAGE 13

of the record that those disorders did not significantly interfere with her ability to

work.  Tr. 1138.  Presumably, Dr. Fallis's report was among those reviewed by Dr.

Trontel.   Dr. Fallis reported that, as of December 2006, Noziska was able to

"complete daily living skills independently" and spent "her days looking for

employment..."  Tr. 619.  Dr. Fallis observed that Noziska had some limitation in

maintaining social functioning, noting that she described having "a history of

problems getting along with others on a long term basis."  Tr. 619.  Dr. Fallis also

recognized that Noziska might have some impairment in her ability to sustain

focus for prolonged periods.  Tr. 619.

The ALJ acknowledged Dr. Fallis's opinion, and limited her accordingly to

simple repetitive work not requiring good memory, concentration, or focus.  Tr.

748.  With respect to Noziska's history of problems getting along with others, the

ALJ accepted Dr. Trontel's assessment that her past problems were due in large

part to her substance abuse, and observed that after October 2005, Noziska

"demonstrated she could go out, seek, and obtain jobs."  Tr. 756.  In October 2006,

for example, Noziska reported to her treating physician Dr. Pamela Roberts  that

she was living by herself and doing seasonal work as a road construction flagger.

Tr. 1054.  And in December 2006, Noziska similarly told Dr.Roberts that she was

"currently employed in drywall and hope[d] to get a job at the Summit where she

PAGE 14

[could obtain] benefits." Tr. 1050.

Dr. Trontel's testimony that Noziska's substance abuse was a contributing factor material to her disability before October 2005 is consistent with the underlying medical records and constitutes substantial evidence in support of the ALJ's determination to that effect. Accordingly, the Court concludes that Noziska has not met her burden of showing that her substance abuse was not a material contributing factor to her disability prior to October 2005.

**C.   Residual Functional Capacity Assessment**

Noziska maintains the ALJ erred by not citing to any examining or other medical sources to support his assessment of Noziska's physical residual functional capacity.   Citing page 456 of the transcript, Noziska claims the ALJ's residual functional capacity "finding does not follow the findings in that assessment, which limits Plaintiff to sitting a total of 5-6 hours per 8-hour day with a need to change positions frequently and lie down as needed." Dkt. 16, at 11.  But page 456 of the transcript says nothing about Noziska's physical limitations.  Rather, page 456 is part of an emergency report from the Western Montana Mental Health Center regarding her detention for a psychiatric evaluation at Pathways.  Tr. 455-463.

The ALJ found Noziska physically capable of performing essentially a full

PAGE 15

range of light work after October 2005.  Tr. 748.  Noziska concedes that the physical limitations identified by the ALJ in his residual functional capacity assessment are consistent with those identified by the state agency physicians, but argues the ALJ erred by not specifically stating he was adopting those opinions. Dkt. 16, at 12.  The fact that the ALJ did not specifically refer to the state agency physicians' opinions is not significant, particularly in view of the other substantial evidence of record supporting the ALJ's assessment.  *See Thomas,*  278 F.3d at 957 (the opinion of a non-examining physician  may constitute substantial evidence if the opinion is consistent with the other evidence of record).

As the ALJ observed, for example,  there was "no objective evidence that [Noziska's] ability to perform work-related activities [was] so limited as to prevent all work due to any neck or back impairment, associated headache, or fibromyalgia."  Tr. 749.   In November 2006 Noziska "denied any physical difficulty cleaning [the] house or difficulty with daily capabilities such as walking, running, standing, or sitting, despite requesting some Percocet to be able to lift weights at the athletic club."  Tr. 750; 979.  By Noziska's own report, in September 2006 she engaged a variety of daily household activities, ranging from laundry and vacuuming to washing dishes, and her hobbies included lifting weights and bowling.  Tr. 865-69.

PAGE 16

In December 2007, treating physician Dr. Pamela Roberts completed a fibromyalgia questionnaire on which she indicated Noziska would be incapable of performing event low stress jobs.  Tr. 967-72.  Dr. Roberts stated that Noziska could sit for only thirty minutes at a time, and stand/walk for two hours at a time. Tr. 970.  Dr. Roberts also indicated that Noziska would need to take unscheduled breaks during the workday, and would be absent more than four days a month.[2] Tr. 972.  Noziska claims the ALJ did not cite sufficient reasons for rejecting Dr. Roberts' assessment.

A treating physician's opinion is entitled to greater weight than that of an examining physician on the basis that he has a "greater opportunity to observe and know the patient."  *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).  The weight given a treating or examining physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record.  20 C.F.R. § 404.1527(d)(2). To discount the controverted opinion of a treating physician, the ALJ must provide "'specific and legitimate reasons' supported by substantial evidence in the record."  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.

_____

[2] On May 19, 2008, Dr. Roberts provided a statement under oath identifying similar limitations. Tr. 927-60.

PAGE 17

1995)).  Among the situations in which the ALJ must cite such specific and legitimate reasons is when a treating physician's opinion is contradicted by a nontreating physician, and the nontreating physician's opinion is not based on independent clinical findings, or is based on the same information used by the treating physician.  *Andrews*, 53 F.3d at 1041.  The ALJ can accomplish this by setting forth "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

The ALJ acknowledged Dr. Roberts' opinion, but rejected it for a number of specific and legitimate reasons.[3]  As an initial matter, the ALJ correctly noted that whether Noziska was capable of working was an issue reserved to the Commissioner.  Tr. 752.  *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).  The ALJ then explained more specifically that he was not giving great weight to Dr. Roberts' opinion because she "appears to have based most of her findings on [Noziska's] subjective complaints as well as psychological factors, which are outside of her area of expertise as a family practitioner, and contrary to the evidence and [Noziska's] testimony she has never sought or received

---

[3] Even assuming the ALJ was required to cite clear and convincing reasons for rejecting Dr. Roberts' opinion, the reasons he provided would satisfy this higher standard as well.

PAGE 18

psychotherapy or mental health treatment, other than chemical dependency

treatment." Tr. 753.  Review of Dr. Roberts' records, and her sworn statement,

indeed reflects that she premised her assessment of Noziska's physical and

psychological limitations in large part on Noziska's subjective complaints. Tr.

927-72, 1024-54.   Because the ALJ found Noziska less than entirely credible for a

number of clear and convincing reasons,[4] the ALJ properly rejected Dr. Roberts'

opinion to the she relied on Noziska's subjective complaints.  *See Bray v. Comm'r*

*of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (explaining that where the

ALJ has properly determined that a claimant's description of her limitations was

not entirely credible, the ALJ could reasonably discount a physician's opinion

"that was based on those less than credible statements.").

     The ALJ also found that Dr. Roberts' opinions were "inconsistent with her

treatment notes, including the lack of objective evidence, and the evidence as a

whole." Tr. 753.  This too constitutes a legitimate reason for rejecting Dr.

Roberts' opinions.  As the ALJ noted, for example, Dr. Roberts reported in

December 2006 that Noziska was employed doing drywall, was looking for a

---

[4]  There is ample evidence of record supporting the ALJ's adverse credibility determination, and the ALJ articulated several clear and convincing reasons for finding Noziska not credible.  Tr. 748-56.  Noziska does not challenge the ALJ's credibility determination.

different job, and complained only of daily headaches and trouble sleeping.  Tr.

753, 1050.   Dr. Roberts' contemporaneous records contain many references

regarding Noziska's "exaggerated descriptions of pain, noncompliance with

treatment, negative screening even for prescribed medications," and positive

screenings for illegal substances.  Tr. 753-54; 1024-54.   As the ALJ properly

found, Dr. Roberts' opinion as to the extent of Noziska's limitations was

unsupported by her treatment notes.

The ALJ appropriately weighed the various medical opinions in this case,

and the residual functional capacity assessment he crafted is supported by

substantial evidence of record.

### D.  Lay Testimony

Noziska next argues the ALJ wrongfully disregarded lay testimony from her

father and grandmother.  Noziska's grandmother, Wonita Drake, testified at

Noziska's hearings in October 2005 and February 2008.  Tr. 77-88; 1235-48.

Drake also completed two questionnaires, one in March 2004 and a second in

September 2006, and wrote a letter in support of Noziska's application for benefits

on May 2, 2005.  Tr. 241-45, 275, 875-82.   Noziska's father, Michael Noziska,

also testified at Noziska's October 2005 hearing and completed a third party

questionnaire in March 2004. Tr. 88-101, 250-58.

PAGE 20

It is well-established in the Ninth Circuit that the "ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Commissioner*, 454 F.3d 1050, 1053 (9th Cir. 2006) (citing *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 2003); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e)). "If the ALJ wishes to discount the testimony of lay witnesses, he must give reasons that are germane to each witness." *Stout*, 454 F.2d at 1053 (quoting *Dodrill*, 12 F.3d at 919).

The ALJ considered the two lay witness questionnaires from March 2004, but found that even taking the observations of Noziska's father and grandmother at face value, their statements did not support a finding of disability.  Tr. 741-42. Both witnesses indeed indicated that Noziska was able to carry on her activities of daily living with minimal difficulty, and their third-party statements were consistent with the ALJ's ultimate determination that Noziska was not disabled. Tr. 240-58.  The ALJ also discussed Drake's testimony at the October 2005, hearing.  As with Drake's written statement, most of her testimony at the hearing did not support a finding of disability.  The ALJ accepted much of that testimony, noting for example that Drake reported Noziska spent time looking for work, visiting with her children, took her children swimming, skiing, and snowboarding, and attended their various activities.  Tr. 750-51.  Drake testified that Noziska

PAGE 21

engaged in a number other activities as well, and thought her granddaughter's inability to keep a job was due to the fact that she did not like to be told what to do.  Tr. 751. The ALJ appropriately considered the above lay witness testimony when assessing Noziska's ability to work.

As the Commissioner concedes, however, the ALJ did not specifically discount the testimony or written statements from Drake and Michael Noziska that tended to support Noziska's allegations of disability.  Dkt. 21, at 15.  To the extent the ALJ did not specifically address favorable portions of the lay witness statements and testimony provided in March 2004 and October 2005, any error was harmless.  In fact, the ALJ accepted that Noziska's impairments were severe enough to satisfy Listing 12.03 before October 2005, but found her substance abuse was a material contributing factor.  In effect, then, the ALJ accepted much of what the lay witnesses had to say about Noziska's condition before October 2005.

Although the ALJ did not specifically discuss Drake's September 2006 third party statement or her testimony at the February 2008 hearing, any error was harmless.  Drake's testimony and written statement were largely cumulative of Noziska's own testimony, which the ALJ properly found less than credible.  *See Zerba v. Commissioner of Social Security Administration*, 279 Fed. Appx.

PAGE 22

438, 440 (9th Cir. 2008) (concluding that the ALJ's failure to address cumulative lay witness testimony was harmless error).  Because the ALJ gave clear and convincing reasons for rejecting Noziska's subjective complaints, and the lay witness' testimony largely reiterated those subjective complaints, any error on the ALJ's part in failing to specifically reject the lay witness testimony was harmless. *See Valentine v. Commissioner Social Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009).

### E.  Duty to Develop the Record

Noziska argues the ALJ failed to fully develop the record with regard to Dr. Roberts.  She maintains the ALJ should have contacted Dr. Roberts again, sent her interrogatories after the hearing, or obtained an opinion from a different examining source.  Dkt. 16, at 24.

It is undisputed that an "ALJ in a social security case has an independent "'duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'" *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (*quoting Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996)).  But this duty is triggered only when "there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."  *Mayes v Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001).  *See also Nguyen v. Commissioner of Social*

*Sec.*, 2008 WL 859425 *7 (E.D. Cal. 2008).

The record in this case was not ambiguous or inadequate.  To the contrary, the record in this case contains several hundred pages of medical records and reports from a variety of sources.  Because the record contained more than sufficient evidence for the ALJ to reach a decision and was not ambiguous, the ALJ's duty to fully develop the record was not triggered.

### F.  Vocational Expert Testimony

Finally, Noziska  argues the ALJ's hypothetical to the vocational expert was flawed because it did not incorporate all of her limitations.  But because the ALJ properly discredited Noziska's testimony and cited sufficient reasons for rejecting Dr. Roberts' opinions, he was not required to include those limitations.  *See Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989) (the ALJ need not include limitations not supported by substantial evidence).  Substantial evidence of record supports the ALJ's assessment of Noziska's residual functional capacity, which was in turn reflected in the hypothetical question he posed to the vocational expert.

## IV.  Conclusion

For all of the above reasons, the Court concludes that the ALJ's decision is based on substantial evidence and free of prejudicial legal error.  Therefore,

PAGE 24

IT IS RECOMMENDED that Noziska's motion for summary judgment be denied, the Commissioner's motion for summary judgment be granted, and the Commissioner's decision be affirmed.

DATED this 30th day of June, 2010

 /s/ Jeremiah C. Lynch
Jeremiah C. Lynch
United States Magistrate Judge

PAGE 25